Well, good afternoon, everyone. You can say good afternoon. It's just like church. You've got to answer the preacher. And Judge Greenaway and I are pleased to have Judge John Jones from the Middle District of Pennsylvania sitting with us this afternoon by designation. We welcome him and thank him for his efforts. Thank you, Judge. So with that, we'll call our first case. And the case of Cynthia A. Siwulecv, you can correct me on that pronunciation if you will, versus JMAdjustingServices, Ms. Combs. Afternoon. I would like to reserve five minutes for rebuttal. That request will be granted. And was I anywhere close on the pronunciation? I say Siwulecv. Siwulecv, OK. We'll go that way. May it please the Court. The Fair Debt Collection Practices Act defines a debt collector. Now, Ms. Combs, there you go. All right. Defines a debt collector as one engaged in any business whose principal purpose is the collection of any debts or who regularly collects or attempts to collect directly or indirectly debts owed or due or asserted to be owed or due another. JM Adjustment promotes itself on its website as a professional doorknock company. Agents of JM Adjustment visit delinquent debtors at their homes, including on nights and weekends, for the purpose of obtaining information regarding the debtors and their properties and communicating with them face to face and reporting back to the creditor or the debt collector that employs them. JM Adjustment provides services exclusively to creditors and debt collectors. It states on its website that it complies with the Fair Debt Collection Practices Act. It also states on its website that its direct customer contact is the single most important factor in reducing delinquency and mitigating losses due to default. And it holds itself out as satisfying a need in the industry for professional field services capable of rapidly communicating with customers and delivering timely and accurate reports back to finance specialists. All right, no. I'm sorry. Go ahead. The question I have is, though, on the facts that you've pled in this case, what we have is a representative of JM calling on the plaintiff and handing the plaintiff a letter. There's no indication that the representative of JMAS did anything else. You want us to take cognizance of all these other things. Aren't you trying to, in effect, discover your way into a suit? Don't you have an X-ball problem here? I don't think so, Your Honor, and here's why. The focus of the definition has to be on the business practices of the defendant, not what happened in the particular instance. And I think it's reasonable to draw a conclusion or an inference from the facts as pled that, in fact, there are facts that we could have discovered had we survived a motion to dismiss because we haven't had an opportunity to do it. Ms. Combs, it almost, and I've looked carefully at this case and tried to look at it from all different sides. And the conclusion I came to, not on the outcome of the case, but how this is portrayed to me, is it sounds to me like you're almost asking us for an advisory opinion as to whether or not JMAS's business falls under the Act. But the issue here is whether or not we should affirm the district court's grant of the motion to dismiss. I understand, Your Honor, and I think what you need to understand about the district court's is that he didn't look at the facts of the business practices of JM Adjustment. He looked just at the fact with respect to Ms. Silula. But that's why I said it almost is as if you're asking us for an advisory opinion as to the JMAS business practices as opposed to the complaint that's been filed by your client. Well, the business practices were included in the complaint because we attached. We referred to the website and the allegations on the website, which describe it as being a practice solely for the purposes of debt collection. But your client wants to represent a class from New York and New Jersey whose rights may or may not have been violated under this Act by the defendant. Doesn't she have to, doesn't your client have to allege facts that shows how the Act was violated as it relates to the conduct involving her? There are two different issues here, Your Honor. They are. Yeah. The first issue is whether or not JM Adjustment is a debt collector. If JM Adjustment is a debt collector, then- See, that's the advisory opinion question I'm referencing. Well, let me just- I'll let you go. I would like to parse out these two issues because- Point two. Point two is if they're a debt collector, they have to comply with the disclosure requirements of the Act, which they clearly did not. That's the violation. That is a separate part. If they are a debt collector, then the violation is easy. The problem that the district court had is that he kind of conflated the two issues. Well, why don't you focus on that? It seems to me that the conflation occurred because the district court focused on deceptive conduct, which the Act doesn't focus on. So help us with that. Okay. The deceptive conduct here is defined by the Act as failure to give the disclosures. And the point is, prior to the Fair Debt Collection Practices Act, debt collectors would pose as lottery people and say, oh, give us your social security number or your work address. Or they'd pose as a IRS agent. And they wouldn't let the debtors know that they were attempting to collect a debt. The statute makes that the deceptive practice. So the deception here is the failure of a debt collector to give, to tell Ms. Simulac, hey, I'm a debt collector, and anything you say to me is going to be used in connection with the debt. And I might accept that, the conflation argument. And I'm not sure that the lower court got that right. But what I'm grappling with here is, can a JM adjustment be, for example, a debt collector in one instance and not in another? Generally, here's the way it works. Generally, they are a debt collector if that's the nature of the business. Because if you look at the definition. Well, I understand that you say it's the nature of the business based on what the somewhat hapless representative dropped on the lawn and what your client recovered. And you're taking that into consideration. And you're taking into consideration, then, what the individual might have done had he followed all of the protocols in what was dropped on the lawn. But on what you've pled in this case, these facts, what I'm struggling with is, do we take cognizance of what the individual could have done? I think you have to, Your Honor, because, again, you're focusing on the nature of the business. Now, that isn't to say that everything a debt collector does is going to cause a violation. If, in fact, they don't have contact with the debtor, then, of course, they don't have to give the disclosures. But the thing that we're dealing with here is we're dealing with an entity that goes out to people's homes, inspects the neighborhood, contacts the neighbors, brings back information. And I think it's a reasonable inference here that a report was given in this instance. Otherwise, how would they get paid? Where do you get, by the way, that the letter that's Exhibit A solicits information? Because I didn't read it that way. If you look at the instructions. The Chase letter. If you look at the instructions, because these are the instructions to JM Adjustment. They're saying, first of all, they're I'm talking about the letter. I'm not talking about the instructions. I'm talking about the letter from Chase that the JM Adjustment rep handed to your client. I think you state in your submission that it seeks to obtain information from her. And I didn't get that from the letter. I saw it as a straight delinquency letter. Perhaps I missed that in our complaint. But it's my understanding of the complaint is that Chase is sending out this entity, this doorknock entity, with a letter. But the information is being asked by Chase of JM Adjustment. And if you look at the instructions, they talk about fill out the field call summary completely. Return the update sheet. Indicate a neighbor's address on each and every assignment. Whether the neighbor confirmed the customer's address or not. So this involves another possible violation. That is contact with third parties when, in fact, they already have contact information. Include a complete description of the property. And then there's the customer letter and financial worksheet are included. Although we don't have a copy of that, that is where it talks about information to be filled out by the borrower. So clearly it's not a messenger service. It is not a messenger service. And there's more at hand. So you would quarrel, I presume, with the district court's reliance on Roehlmein because it's clear that JMS is involved in the indirectly collecting debts because it's getting the information for Chase. There's deception in that it's not putting forth who it is and what its purpose is. That's correct. One thing I would point the court to in looking at what is an appropriate way to look at who a debt collector is is an exception to the Fair Debt Collection Practices Act for the process server. Now, a process server is similar to what we've alleged J.M. Adjustment does. They go out and collect information about the debtor. They personally serve documents and they give a report. The Fair Debt Collection Practices Act in section 1692 A6D excludes the process server. And that implies that, in fact, if they weren't excluded, they would be part of, by definition, and there are obviously good reasons for not making them debt collectors. But I think it gives a clue to the courts as to who is included. And I think the other thing you have to understand is that Roehlmein had deceptive parts of it because there was the whole notion of capturing a cell phone number when the person didn't know that. But this is pretty egregious, the idea of going out to the neighborhood. They're not like the Postal Service or UPS. They're not wearing a uniform. They don't have a name on their truck. They knock on the door and they're talking to neighbors. And it's very much an intrusion. And I think one way of dealing with the fact that the intrusive nature of this is make them tell them that they're debt collectors. Are they a direct debt collector or an indirect debt collector? You know, I would say this is indirect in that they're not actually collecting the money. On the other hand, I would say they're indirect. On the other hand, I would point out that all they do is deal with the debt collection industry. That's what they do. And if Chase could send their own people out, they could, say, send someone else. But they don't want to send their people out into the neighborhood because they don't want an article out in the Wall Street Journal. So instead, they hire JM Adjustment to do, in effect, this kind of intrusive practice. And they provide that service to the debt collection industry. All right. We'll have you back on rebuttal. All right. Thank you very much. Mr. Gicking? May it please the Court, Jim Gicking for JM Adjustment Services. It seems to me that this, and as argued in the brief, the Court must focus on the facts as alleged here. The only activities that were alleged here are the handing of an unmarked envelope to the debtor, to plaintiff, an envelope that contains a letter from the creditor that meets all the requirements. It's not disputed that the letter doesn't in any way misrepresent what it is. And it has the required disclosure under the act that it is also obvious from its contents that it is part of the debt collection process. That's the only fact, the only activity that is actually alleged here. And there isn't a case in the federal or state courts identified by the parties or by the judge that suggests that that kind of conduct could ever make someone an indirect debt collector. Romine moved into new territory when it looked at the purpose of the act and decided that collecting a phone number, which once again is not a violation of the act, does not make someone a debt collector by collecting someone's phone number. So Romine was properly decided? I do think it was properly decided. But because it, although there was a departure, let me back up just a minute. I think it was right to look at the facts, the purposes of the act, and consider that there was deception involved. And it should consider the activities of someone who is assisting in some way, shape, or form. But if you take, go ahead, I'm sorry. I'm sorry. Go ahead, I'm sorry. Is JM only dropping the letter off for its clients? Here, it's a chase letter. Is your point that under all circumstances, it's just the drop off of a letter? Because the allegations are that it's more than that. Well, the only direct contact with anyone that's alleged is the handing the letter to the plaintiff. But the inferences that you might draw from the discarded dropped instructions is the solitary acts, not involving another human being, of observing the house, the condition of the house, whether it's for rent or for sale. That, in no way, shape, or form, involves contact with another human being. But the contact with a neighbor does. Well, and it's not clear from those instructions. There might be an inference that some contact with neighbor would occur. But contact with a neighbor confirming an address would not be deceptive. Well, but again, that gets into the conflation problem, I think. And what I'm, again, grappling with here is what we take cognizance of for the purpose of making a determination whether the rep from JM Adjustment is an indirect or a direct collector, or not a collector or a debt collector at all. Now, it seems to me that there's a reason. It's sort of a walks like a duck and quacks like a duck. You go and you call personally on the debtor. You observe the house. Now, I might agree that that is a way to ensure that the collateral's in good shape. But then why go talk to a neighbor? To secure an address from a neighbor? To me, that looks like sort of a discreet way to influence the collection of a debt. Of course, setting aside the issue, you say we can take cognizance of nothing other than the knock on the door and the handing a letter. Is that your position? Well, entirely. I mean, there are inferences that could be drawn from those instructions. But none of those inferences, in my view, that you could draw from those instructions involve anything that the act captures. There are no cases that. Why go see the neighbor? What's the point of seeing the neighbor, your view? My view is to confirm that this is the address of the debtor. You think that's all they do? I mean, there's a range of activities here. They may or may not make contact with the debtor. And you want to see if the house has been rented, or if it's for sale, sold, unoccupied, whatever. So I mean, that's a perfectly reasonable thing that you can confirm an address. You can get that information off the internet. I mean, you couldn't be arguing that they're going to go knock on a neighbor's door just to confirm an address. They're there to get information. They're investigating. Well, first of all, it's not clear that they're knocking on a neighbor's door. I mean, it does sound as if there's a confirming aspect of that. And it could involve talking to a neighbor. But that's not a requirement in those instructions. You could ask someone on the street, is this so-and-so's house? Is that a violation of the FDA? Does that make you an indirect debt collector? Well, let me ask you this. Doesn't the act require the court to look, or anyone viewing it, to look at the principal purpose of JM's business and what its regular collection activities are, and not, as you suggest, just the letter? You look at the purposes of the activities, the purposes of the act. Romine, the entire decision, in my view, is premised on looking at the legislative history of the Fair Debt Collection Practices Act, and deciding that it is enacted to limit harassing, misleading, and fraudulent contacts. And then it looks at what are the activities in here, and do they fall within the ambit of that act? Can they, or otherwise, we get into someone looking at the internet. That may be the only service they offer. What's the principal purpose? I'm sorry. I just want to follow up on what I said. What's the principal purpose of the business? That's not in the record. They do advertise these services to the debt collection industry. I'm not sure if there are others. JM Adjustment Service, there may be other services they perform. That's not something that was revealed during the course of what's not in the complaint. You would appear to concede that under certain circumstances, JM Adjustment is a debt collector, but not in this case. No, I wouldn't concede that. There's nothing in those instructions that suggests, first of all, they say they're compliant with the act. Right. Why would they say that? Well, why wouldn't they say that if they're trying to market services to the debt collection industries, they want to make certain that there's not anything that they're doing that's deceptive, or fraudulent, or harassing, or that they're being careful about that. Let me jump ahead to another point while you're up. Let me just ask one question about the compliance, compliant with the act. Is that in the record from what was on the website? I sat there thinking I missed something. I did not see that in the complaint. I thought it was on the website. But is it in the record? We'll get the miscompliance. I think it might have been mentioned in the briefing before the district court, but I don't believe it's may not have been in the complaint. Yeah, OK. Go ahead. I'm sorry. Judge Fisher raises a good point. But on the default issue, you say, in effect, that default is a magic word that has to appear in the letter in order to fit under the act? I think it's plaintiff's burden in making out an FDCPA case. You think at the 12B stage that a court can't greenlight a case based on delinquent rather than there's something talismanic about the word default that has to appear in the letter? Is that your position? I think the allegation should suggest that the debt is in default in order to make a proper allegation.  And that may be something to be revealed and discovered. But I think Judge Jones asked you, why doesn't an inference arise from the fact that you've listed a debt? It looks like maybe only one mortgage payment, but why doesn't an inference arise that that's in default? It may, Your Honor. I'll concede that it may. You concede the conflation argument that the opposing counsel makes? No, because I think the only reason we're here at all is because in Romine, they did the same conflation. If you want to call it that, they work backwards. They look to see what the purpose of the act were. If your decision, in my view, can't be read another way. So there has to be. It's not as, there are no, there is Romine and there's Utis. Those are the only two cases that have held that collecting a phone number is a. No, but if I understand the plaintiff's argument, it is that if you're a debt collector and if you're in the course of collecting a debt, you've got to make that disclosure. Right. And it was the failure to make the disclosure that fits under the act. It's not some later deceptive act that happens. But any number of services would be picked up. Anybody who does anything then for a collection agency would be an indirect debt collector under that formulation, in my view. That's your view. So where does that line get drawn? Romine said it gets drawn by whether or not the activities look like anything like what the act was meant to cover. That's why I ask you, did you think Romine was properly decided? And you said yes. Well, I spoke too quick. Do you want to take that back? I said after that that I thought it was probably decided in terms of the way it viewed the act and what the purpose of the act were. I agree with the dissent that this is not an instance. As unfortunate as the conduct was, and it should have been embarrassing to Western Union, said the dissenter, it's not FDCPA. It doesn't make you an indirect debt collector by offering this service. And Romine reversed a district court judge who thought it didn't either. And there are other decisions out there in the same posture. Romine is kind of an outlier, in a way, as far as that goes. Thank you, Your Honor. OK. Thank you, Mr. Kuechn. Ms. Gomes? Just briefly. Is that point about the compliance, is that in the record? The FDCPA? You know, I know we've made the argument, and I couldn't find it. I don't remember it being in the complaint. It's not in the complaint. It might well be in the reference to the website. I could not find it as I was sitting there, Your Honor. I apologize. I would like to point out that counsel has argued that, or J.M. Adjustin has argued that the Fair Debt Collection Practice Act doesn't bar collecting information. That's half right. The Fair Debt Collection Practices Act doesn't bar the collection of information, but it does regulate it. 1692E10 forbids the use of a false representation or deceptive means to obtain information concerning a consumer. That means the sole act of obtaining information can be a violation. But that's only so if you're a debt collector. That is correct. That is correct. But what we're saying is that the nature of the activity of 8,000 field agents visiting the homes of debtors and delivering letters and collecting information is clearly debt collection. The failure of these people to identify themselves is a false and misleading representation under the act, and we would ask you to reverse. Thank you. All right, we thank you. We thank both counsel for a case that was well-briefed and well-argued, and we'll take the matter under advisement. Thank you.